Case 7:24-cv-00063-EKD-CKM   Document 21   Filed 03/28/25   Page 1 of 11
Pageid#: 137

CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

March 28, 2025

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TEKOA TINCH,                ) | |
|     Petitioner,           ) | Civil Case No. 7:24-cv-00063 |
| v.                          ) | |
|                           ) | |
| JOHN GILLEY,[1]             ) | By: Elizabeth K. Dillon |
|     Respondent.           ) | Chief United States District Judge |

**MEMORANDUM OPINION**

Tekoa Tinch, a federal inmate proceeding *pro* se, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging disciplinary action taken against him while incarcerated at the United States Penitentiary (USP) in Lee County, Virginia. (Habeas Pet., Dkt. No. 1.) The respondent moves to dismiss for failure to claim, or in the alternative, for summary judgment (Dkt. No. 4), and petitioner responded (Dkt. Nos. 15, 15-1 through 4). The summary judgment motion will be granted, and petitioner's motion for a preliminary injunction (Dkt. No. 10) will be denied.

I.  BACKGROUND

**A. Disciplinary Charges**

Tinch is a federal inmate being held at USP Lee. (Barnette Decl. ¶ 1, Resp't's Ex. 1, Dkt. No. 5-1.) On September 25, 2023, Senior Officer Specialist Nathan Carroll prepared Incident Report No. 3831094, charging petitioner with Refusing to Obey an Order in violation of Bureau of Prison (BOP) disciplinary code 307 and Failing to Stand Count in violation of BOP disciplinary code 320. (Resp't's Ex. 1, Attachment A, Dkt. No. 5-2.) The report states that on September 25, 2023, at approximately 8:20 a.m., control announced an institutional count on

---

[1] J.C. Streeval is no longer the warden at USP-Lee; it is John Gilley. The Clerk is directed to substitute Gilley for Streeval as the respondent in this action. Fed. R. Civ. P. 25(d).

each tier of the housing unit. (*Id.*) When Officer Carroll approached cell 122, petitioner was not standing for count, and instead was sitting on his bed. (*Id.*)

A copy of the Incident Report was provided to petitioner on September 25, 2023. (*Id.*) Petitioner was advised of his rights by Lieutenant P. Corbin. (*Id.* at 3.) Petitioner indicated that he understood his rights and made no comment. (*Id.*) Lieutenant Corbin concluded that the Incident Report was accurate and warranted and referred the action to the Unit Discipline Committee (UDC) for further disposition. (*Id.*)

A UDC hearing was conducted on September 27, 2023. (*Id.* at 2.) Petitioner once again made no comment. (*Id.*) The UDC determined that petitioner had committed the prohibited acts as charged. (*Id.*) The UDC sanctioned petitioner with loss of commissary for one year and loss of Tru-Links (computer access) for six months. (*Id.*; *see also* Attachment B, Dkt. No. 5-3.) Petitioner was not sanctioned to any loss of Good Conduct Time (GCT), and the matter was not referred to the Discipline Hearing Officer (DHO) for further proceedings. (*Id.*)

Petitioner's UDC sanctions did not affect his ability to earn time credits under the First Step Act (FSA). Petitioner is currently earning FSA Time Credits and has not been penalized in his ability to earn those credits. (Attachment C, Dkt. No. 5-4.) However, petitioner's classification as medium risk means that he is ineligible to apply FSA time credits. (Barnette Decl. ¶¶ 6, 8, Attachment D, Dkt. No. 5-5.) Petitioner's PATTERN Worksheet Summary[2] reflects a "Value" of "2" under the "Time Since Last Incident Report" section, indicating two separate incident reports. (Attachment D.) Inmates receive 2 points for an Incident Report that occurred within the last 3–6 months, and 1 point if it occurred in the last 7–12 months.

---

[2] The Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN) is the recidivism risk assessment tool used by the Bureau of Prisons. *See* BOP Program Statement 5410.01, available at https://www.bop.gov/mobile/policy.

2

(Attachment E, Dkt. No. 5-6.) Petitioner's most recent recidivism risk assessment was on December 13, 2023. (Attachment D.) The disciplinary action at issue occurred in September 2023, which falls within the range of 3–6 months. Thus, petitioner received 2 points each to his General and Violent Scores.

**B. Inmate Discipline Program**

Pursuant to authority delegated by the United States Congress, the Bureau of Prisons (BOP) has promulgated rules for inmate discipline. *See* 28 C.F.R. § 541. Under these rules, BOP staff prepares an incident report (IR) when they reasonably believe that an inmate has violated a BOP regulation. *See* 28 C.F.R. § 541.5(a). Staff provide the inmate with a written copy of the charges against him, ordinarily within twenty-four hours of the time staff became aware of the inmate's involvement in the incident. 28 C.F.R. § 541.5(a).

An investigating officer informs the inmate of the charges and asks for the inmate's statement concerning the incident. The officer advises the inmate of his right to remain silent, informing him that his silence may be used to draw an adverse inference against him. The officer further explains that the inmate's silence alone may not be used to support a finding that the inmate committed a prohibited act. 28 C.F.R. § 541.5(b).

After the inmate is advised of the charges and his rights, and after the staff investigation is completed, a Unit Disciplinary Committee (UDC) reviews the incident report. 28 C.F.R. § 541.7. The UDC is tasked with reviewing the IR within five working days after it is issued. The inmate is permitted to appear in person or electronically at the UDC review of the IR, except during deliberations, or when the inmate's presence could jeopardize institutional security. The inmate is entitled to make a statement and to present documentary evidence on his own behalf at the UDC review. *See* 28 C.F.R. §§ 541.7(c), (d), (e). After considering all of the evidence

presented at the review, the UDC makes a decision on the IR.  The UDC's decision must be based on some facts, and if there is conflicting evidence, based on the greater weight of the evidence.  28 C.F.R. § 541.7(e).

The UDC either finds the inmate committed the prohibited act as charged and/or a similar prohibited act if reflected in the incident report, finds the inmate did not commit the prohibited act charged, or refers the case to the DHO for further proceedings.  28 C.F.R. § 541.7(a).  If the UDC finds that the inmate committed a prohibited act or prohibited acts, the UDC can impose any of the available sanctions in Tables 1 and 2 of § 541.3 except loss of good conduct time credit, FSA Time Credits, disciplinary segregation, or monetary fines.  § 541.7(f).  When an alleged violation is serious and warrants consideration for other than minor sanctions, the UDC refers the charges to the DHO for further proceedings.  § 541.7(a)(4).

In this instance, the UDC found that petitioner committed the prohibited act as charged and advised him or his right to file an appeal within 20 calendar days.  (Attachment A.)  The violation was not sufficiently serious to be referred to the DHO.

**C. Petitioner's Response**

In response, Tinch filed an affidavit and three attachments.  (Dkt. No. 15, 15-1; Attachments A, B, C, Dkt. Nos. 15-2, 15-3, 15-4.)  He avers that his incident report "failed to state who exactly gave me any direct orders to stand for count."  (Dkt. No. 15-1, Tinch Aff. ¶ 2.)  Tinch never heard anyone say "standing count" or "emergency count," and the report does not allege that Tinch knew there was a standing count.  (*Id.* ¶ 3.)  He writes that there is no rule or code that warned him he would be required to stand for all counts, and he did not knowingly or intentionally disobey any order.  (*Id.* ¶¶ 4–5.)  Further, he contends that the report did not adequately state the alleged violation.  (*Id.* ¶ 6.)

4

Tinch argues that his due process rights were violated because he was ejected from the Challenge Program, which delays his ability to earn FTC days. He clarifies that he is not seeking to apply any earned time credits because he understands that he is not eligible because of his medium risk level classification. (*Id.* ¶¶ 7–8.) Finally, he contends that he "genuinely dispute[s] several alleged facts provided" in respondent's motion. (*Id.* ¶ 9.)

## II.  ANALYSIS

### A.  Summary Judgment[3]

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of fact precludes summary judgment. *Anderson*, 477 U.S. at

---

[3] Because the court has considered evidence outside of the pleadings, the court will address this matter as a motion for summary judgment.

248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).  On the other hand, summary judgment is appropriate if the evidence is "so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252.  And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

While the submissions of *pro se* litigants are liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the court must also abide the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

**B. Petitioner's Claims**

Tinch argues that the incident report was insufficient for his finding of guilt.  He claims that he was wearing headphones and was not aware of the order to stand.  (Habeas Pet., Dkt. No. 1.)  He requests a finding that he exhausted his available remedies[4] and that he has not committed the prohibited acts with which he was charged.  (*Id.* at 7 of 10.)  He also asks the court to direct respondent to amend his First Step PATTERN Worksheet to reflect that Tinch can earn and apply more First Step Act Time Credits so he can shorten his sentence.  (*See id.*)

**C. Due Process**

Liberally construed, petitioner alleges a due process violation arising from the above-described disciplinary proceedings.  The Fifth Amendment prohibits the federal government from depriving an individual, such as a federal prisoner, of life, liberty, or property without due process of law.  U.S. Const. amend. V; *see Burrell v. Virginia*, 395 F.3d 508, 515 (4th Cir. 2005) (explaining that the Fifth Amendment has "direct application to the Federal Government")

---

[4] Respondent has not raised exhaustion as a defense in this matter.

6

(quoting *Griffin v. California*, 380 U.S. 609, 615 (1965)). "To state a procedural due process claim, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). For prisoners serving a custodial sentence, a protected interest is "in the nature of a liberty interest" if the deprivation (1) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or (2) inevitably affects the duration of the inmate's sentence. *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995); *see Gordon v. Stumpf*, Civil Action No. 7:23cv00197, 2024 WL 3648110, at *5 (W.D. Va. Aug. 2, 2024). However, only the latter scenario is cognizable in a § 2241 action. *Sandin*, 515 U.S. at 487; *Richardson v. Ortiz*, Civ. No. 19-21107 (RMB), 2021 WL 1502124, at *7 (D.N.J. Apr. 16, 2021) ("Due process claims based on sanctions that do not affect the execution or duration of a prisoner's sentence are not cognizable under 28 U.S.C. § 2241."); *Rivemider v. Joyner*, CIVIL ACTION NO. 9:17-1894-BHH-BM, 2018 WL 4560716, at *1 n.2 (D.S.C. Jan. 17, 2018) (dismissing claims concerning conditions of confinement because relief cannot be sought under § 2241); *Hargrove v. Masters*, Civil Action No.:1:15-06930, 2017 WL 712758, at *2 (S.D.W. Va. Feb. 23, 2017) (finding that petitioner's challenge to his conditions of confinement was properly construed as an action pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) because "challenges to the conditions of confinement are not cognizable under § 2241, and instead must be pursued through a *Bivens* action").

It is undisputed that the punishments received by Tinch—loss of commissary for one year and loss of Tru-Links (computer access) for six months—did not affect the duration of Tinch's prison sentence. The loss of Good Conduct Time is not an authorized sanction by a UDC, and it was not imposed in this instance.

Regarding First Step Act Time Credits, Tinch is eligible to earn FSA Time Credits,[5] but he is not eligible to have those credits applied because he is classified at the medium risk level. *See* 28 C.F.R. § 523.42 (outlining the earning of FSA Time Credits); 28 C.F.R. § 523.44(c)(1) and (d)(1) (limiting the application of time credits to eligible inmates who have a minimum or low recidivism risk). Petitioner's most recent risk assessment resulted in a General Score of 44 and a Violent Score of 30, both of which fall within the medium ranges. (Barnette Decl. ¶ 8.) And even if the disciplinary action were overturned, petitioner's scores would still fall within the medium risk range. (*See id.* ¶¶ 9–10; Ex. 1, Attachment D.) Petitioner's General Score would decrease to 41 and his Violent Score would decrease to 27, and the higher of these two values would apply, placing him in the medium range. (Barnette Decl. ¶ 7; Attachment F, Dkt. No. 12-7 (Recidivism Risk Level Cut Points Chart, showing that if an inmate's general and violent scores fall within two ranges, the higher range applies).); *see Salomon v. Heckard*, Case No. 5:22-cv-00081, 2022 WL 2446286, at *5 (S.D.W. Va. June 6, 2022) (denying § 2241 petition because petitioner was ineligible for FSA time credits due to high recidivism risk).

Tinch argues that he is not challenging his ability to *apply* FSA Time Credits that he has earned. (Dkt. No. 15 at 11.) Instead, he argues that he is unable to earn an increased number of credits (15 versus 10 days per month), so that once he become eligible to apply his earned FSA Time Credits, he will have a greater number of credits to cash in, thus reducing his incarceration length. (*Id.*) However, due process rights do not attach to FSA credits, which "unlike good-time credits accumulated under [18 U.S.C.] § 3624(b), are not a general entitlement." *White v. Warden, Fed. Corr. Inst.–Cumberland*, No. CV DKC-22-2371, 2023 WL 4867562, at *10 (D. Md. July 31, 2023). The "loss of a mere opportunity to accumulate credit towards a sentence is

---

[5] The disciplinary sanctions received by Tinch do not affect his ability to earn FSA Time Credits. *See* 28 C.F.R. § 523.42 (outlining criteria).

8

not sufficient to create a protected liberty interest." *Id.* Tinch also argues that the assessed points make it more difficult for him to move into a lower PATTERN classification, which would enable him to earn more FSA credits. (Dkt. No. 15 at 13.) Tinch's PATTERN score is not subject to judicial review. *See Steelman v. FCI Beckley Warden*, Case No. 5:23-cv-00599, 2024 WL 1781909, at *3 (S.D.W. Va. Apr. 5, 2024) (listing cases finding that 18 U.S.C. § 3625 "prohibit[s] judicial review of a prisoner's PATTERN score or recidivism risk level").

Tinch has also argued that his due process rights were violated because he was not given proper notice of the charges against him, as it did not state which officer gave him the order that he allegedly failed to obey. (Dkt. No. 15 at 9.) It is not necessary to fully address this argument as the foregoing analysis has demonstrated the absence of a protected liberty interest. The court notes, however, that Tinch was given written notice of the charges against him, meeting the requirements of *Wolff v. McDonnell*, 418 U.S. 539, 564–68 (1974). (*See* Attachment A (stating date and time "control announced an institutional count").)

For these reasons, respondent is entitled to summary judgment.[6]

## D. Preliminary Injunction

Tinch has moved for an order, or "simple directive," that instructs the respondent to allow him to purchase legal materials at least twice a month. (Dkt. No. 10.) He complains that he has

---

[6] The court also notes that petitioner has requested mandamus relief, asking the court to instruct respondent to "cease and desist the practice of making the Administrative Remedy Process available or unavailable contingent upon a Unit Counselor's discretion" and to "amend the Petitioner's First Step Act PATTERN worksheet." (Habeas Pet. 7.) Petitioner is not entitled to mandamus relief for all the reasons stated in this order. *See In re Braxton*, 258 F.3d 250, 261 (4th Cir. 2001) (stating that petitioner seeking mandamus relief must establish "(1) he has a clear and indisputable right to the relief sought; (2) the responding party has a clear duty to do the specific act requested; (3) the act requested is an official act or duty; (4) there are no other adequate means to attain the relief he desires; and (5) the issuance of the writ will effect right and justice in the circumstances.").

9

been unable to access legal materials, such as stamps, envelopes, paper, and pens, to use for this case and various other cases he has brought due to lockdowns imposed at USP Lee. (*See id.*)[7]

The court's jurisdiction in this matter is limited to determining whether petitioner's due process rights have been violated and the impact that has on the duration of his confinement. Claims concerning the conditions of petitioner's confinement must be brought separately in an action under 42 U.S.C. § 1983 or pursuant to *Bivens*. *See, e.g.*, *Khan v. Warden of Tallahatchie Cnty. Corr. Inst.*, C/A 9:20-2653-BHH-MHC, 2020 WL 5607776, at *1 (D.S.C. Sept. 18, 2020) (denying motion for preliminary injunction seeking access to law library in case brought pursuant to 28 U.S.C. § 2254).

Even if the issues raised in his motion were cognizable in a habeas proceeding, a preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking such relief "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20.

The plaintiff must also "establish a relationship between the injury claimed in the [plaintiff's] motion and the conduct asserted in the complaint." *Omega World Travel v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997). "This requires a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015). A preliminary injunction "may never issue to prevent an injury or harm which not even the

---

[7] To the extent these issues may have impacted petitioner's ability to litigate this case, the court granted two motions to extend the time to respond to respondent's motion for summary judgment, and petitioner filed a response in compliance with those orders. (Dkt. Nos. 9, 13, 15.)

moving party contends was caused by the wrong claimed in the underlying action." *Omega World Travel*, 111 F.3d at 16.

Applying these standards, Tinch's motion does not satisfy any of the requirements set forth in *Winters*. For the reasons stated herein with respect to respondent's motion for summary judgment, Tinch fails to succeed on the merits of this action. Moreover, his motion does not seek to prevent harm caused by the conduct asserted in the underlying petition. Tinch's motion is unrelated to the conduct described in the petition, which is that the respondent violated his due process rights when Tinch was disciplined for disobeying an order, and therefore, the conduct alleged in the motion cannot provide the basis for a preliminary injunction in this lawsuit. *See Nealson v. Blankenship*, Civil Action No. 7:23-cv-00071, 2023 WL 2776069, at *1 (W.D. Va. Apr. 4, 2023) (denying motion for preliminary injunction because "[t]hese new allegations, while undoubtedly troubling, are not clearly related to the conduct described in the complaint") (citing *Devose*, 42 F.3d at 471).

### III.  CONCLUSION

For the foregoing reasons, the court will issue an appropriate order granting the government's motion for summary judgment, denying Tinch's motion for a preliminary injunction, and dismissing this matter with prejudice.

Entered: March 28, 2025

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge